UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Demetrius Jackson, Sr., | ) | C/A No. 6:25-cv-11631-TMC-WSB |
|               Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Publix Super Markets Inc. | ) | |
|               Defendant. | ) | |

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 55. Plaintiff is proceeding *pro se*, and, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district court.

**BACKGROUND AND FACTUAL ALLEGATIONS**

In his Amended Complaint and attached Affidavit, Plaintiff, an African American male, alleges that he has shopped and regularly purchased money orders at one of Defendant's stores – Store #0531 – in Greer, South Carolina for over 25 years. ECF No. 34 ¶¶ 6, 8. Plaintiff alleges that on or about July 14, 2025, while recovering from hip surgery, he sent Macaden Burnett ("Ms. Burnett"), a white female, to purchase a money order at Store #0531 for $390.00. *Id.* ¶ 9. Ms. Burnett presented valid identification and documentation but was "denied the transaction after being interrogated about the purpose of the money order." *Id.* ¶ 10. Plaintiff contends that Ms. Burnett was confronted by a white male customer service manager, an office assistant, and a white

male customer service clerk, all who questioned her in a "confrontational and accusatory manner" and informed her that Defendant's policy required customers to disclose the reason for purchasing a money order. ECF No. 34-1 ¶ 5.

Plaintiff entered the store to request the money order, "having completed over 1,000 similar transactions at this location." ECF No. 34 ¶ 11. Plaintiff contends he was "met with hostility." ECF No. 34-1 ¶ 6. The cashier called over a customer service manager, "who publicly accused Plaintiff of suspicious behavior and denied the transaction in a loud, condescending tone." ECF No. 34 ¶ 12. Plaintiff alleges that he requested that the customer service manager provide written documentation of the policy requiring customers to disclose the purpose of money order purchases, but the manager was unable to provide such documentation. ECF No. 34-1 ¶ 6. Plaintiff alleges that the customer service manager "repeatedly pointed his finger at [Plaintiff] in a threatening and aggressive manner, in full view of other staff and customers" and told Plaintiff to "relax" in a condescending tone. *Id.* Plaintiff informed the customer service manager that he "was neither a child nor ignorant, but his patronizing and disrespectful demeanor only escalated the situation." *Id.* Plaintiff informed the customer service manager that he had previously purchased a money order without any issue or requirement to disclose its purpose. ECF No. 34 ¶ 13. Plaintiff did not purchase the money order and was instructed to "come back tomorrow." *Id.* ¶ 14. Plaintiff claims he experienced public humiliation and emotional distress. *Id.*

Plaintiff alleges that he purchased a money order from another one of Defendant's stores two days prior, on July 12, 2025, without being asked any questions or presenting identification. ECF Nos. 34 ¶ 15; 34-1 ¶ 10. Plaintiff contends that photographs of in-store policies at Store #0531 reveal no requirement for a customer to state the purpose of a money order purchase. ECF No. 34 ¶ 16. Plaintiff also alleges that he submitted a written complaint, but Defendant failed to

conduct an independent investigation and allowed a store manager to oversee the matter internally. *Id.* ¶ 18; ECF No. 34-1 ¶ 12. This store manager responded with a letter "defending the discriminatory behavior" and declining "to escalate the matter to corporate for independent review." ECF No. 34-1 ¶ 12.

On July 18, 2025, Plaintiff filed a Complaint against Defendant in the Greenville County Court of Common Pleas, alleging claims for violation of 42 U.S.C. § 1981; violation of Title II of the Civil Rights Act of 1964 ("Title II"); intentional infliction of emotional distress ("IIED"); and negligent hiring, training, and supervision. ECF No. 1-1. Defendant filed a Notice of Removal on August 27, 2025. ECF No. 1. Plaintiff filed an Amended Complaint against Defendant on September 19, 2025, alleging claims for race discrimination in contract in violation of § 1981; public accommodation discrimination in violation of Title II; violation of South Carolina public accommodations law pursuant to S.C. Code Ann. § 45-9-10; IIED; and negligent hiring, training, and supervision. ECF No. 34. Plaintiff seeks compensatory damages in the amount of $100,000,000; punitive damages; declaratory relief declaring Defendant's conduct unlawful; injunctive relief mandating non-discriminatory policies and employee training; costs and attorneys' fees; and any further relief the Court deems just and proper. *Id.* at 3.

Defendant filed a Motion to Dismiss on September 29, 2025. ECF No. 55. On September 30, 2025, in an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and motion to dismiss procedures and the possible consequences for failing to respond adequately. ECF No. 57. Plaintiff filed a Response on September 30, 2025. ECF No. 60. Defendant filed a Reply on October 2, 2025. ECF No. 67. This matter is ripe for review.

3

**APPLICABLE LAW AND ANALYSIS**

**Defendant's Motion to Dismiss**

*Standard of Review*

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F.Supp.3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a "short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "In assessing the sufficiency of a complaint, [the court] assume[s] as true all its well-pleaded facts and draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).[1]

---

[1] Plaintiff has filed numerous documents and items which were not integral to and explicitly relied upon in the Amended Complaint and are improper to consider when addressing Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.,* ECF Nos. 40; 42; 43; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (noting that at Rule 12(b)(6) stage, courts can consider documents not attached to a complaint if

### *Section 1981*

Plaintiff alleges that Defendant denied him the right to make and enforce contracts on equal terms because of his race in violation of § 1981.  ECF No. 34 ¶ 19.  Section 1981 grants all persons within the jurisdiction of the United States "the same right … to make and enforce contracts … as is enjoyed by white citizens."  42 U.S.C. § 1981.  To establish a prima facie case of race discrimination under § 1981 relating to the purchase of goods or services, a plaintiff must show that

> (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

*Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Plaintiff has failed to allege any facts to satisfy the fourth element of this claim – that "he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers."  *Williams*, 372 F.3d at 667.  Specifically, Plaintiff alleges that Defendant refused to sell a money order to Ms. Burnett, his white partner, because several of Defendant's employees stated that Defendant's policy requires customers to disclose the reason for purchasing a money order.  Plaintiff alleges that Defendant subsequently refused to sell him, an African American male, a money order for the same reasons.  There are no allegations that Defendant allowed any white customers to purchase money orders without stating the reason for purchasing a money order.

---

the documents were "integral to and explicitly relied on in the complaint" and there is no authenticity challenge).

5

Because Plaintiff's Amended Complaint is devoid of any specific allegations regarding the fourth element of this claim, the undersigned recommends that the district court grant Defendant's Motion to Dismiss as to Plaintiff's claim under § 1981. *See Robinson*, 551 F.3d at 222 ("[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 555, 570); *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,* 589 U.S. 327, 341 (2020) ("To prevail [on a claim under § 1981], a plaintiff must initially plead … that, but for race, [he] would not have suffered the loss of a legally protected right."); *e.g., Bellamy v. Finn McCool's Bar*, C/A No. 4:18-cv-01636-JMC, 2018 WL 4767241, at *2 (D.S.C. Oct. 3, 2018) ("[A]lthough Plaintiff's feelings of humiliation as a result of the alleged incident at McCool's are regrettable, because Plaintiff does not allege he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers, his Amended Complaint fails to state a claim under § 1981."); *compare Williams*, 372 F.3d at 665-68 (noting that a plaintiff established a prima facie case of § 1981 discrimination in part because of the plaintiff's allegations that the defendant refused to accept the plaintiff's out-of-state check to purchase goods but accepted a white customer's out-of-state check).

### *Title II*

Plaintiff alleges that Defendant violated Title II because he was denied full and equal enjoyment of goods and services on the basis of his race in one of Defendant's stores. ECF No. 34 ¶¶ 21-22. Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the

ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).  Title II provides for the following prerequisite to filing suit:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

*Id.* § 2000a-3(c).

South Carolina has a state law prohibiting discrimination in public accommodation.  *See* S.C. Code Ann. § 45-9-10(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in Article 1 of this chapter, without discrimination or segregation on the ground of race, color, religion, or national origin."); *see also Martin v. Town of Summerville*, C/A No. 2:19-0774-RMG, 2021 WL 2014995, at *4 (D.S.C. May 20, 2021) ("Section 45-9-10 is … substantively identical to 42 U.S.C. § 2000a."), *aff'd by* 2023 WL 2708969 (4th Cir. Mar. 30, 2023).

As explained by a court in this District, South Carolina's law prohibiting discrimination in public accommodation

> establishes and authorizes a state authority, the South Carolina Human Affairs Commission [("SCHAC")] to grant or seek relief from such practice or to institute state criminal or civil proceedings. Under South Carolina's statutory scheme, a state court action for damages is authorized, but only after the allegedly aggrieved party has filed a charge of discrimination with the [SCHAC] and sought

7

> conciliation, and sixty (60) days have elapsed after filing of the state charge.

*Harrison v. Lee*, C/A No. 2:14-cv-4544-RMG, 2015 WL 337634, at *3 (D.S.C. Jan. 26, 2015); *see* S.C. Code Ann. § 45-9-100, *et seq.*

"While the United States Fourth Circuit Court of Appeals has apparently not issued a published opinion on this issue, the Sixth, Seventh, Eighth, and Tenth Circuit Courts of Appeals have all held that § 2000a-3(c)'s requirements are jurisdictional. The District Court for the District of Columbia has held likewise." *Harrison*, 2015 WL 337634, at *3. "Thus, in a state like South Carolina which has a state law prohibiting discrimination and a state agency authorized to grant or seek relief from such practices, this 'mandatory procedural prerequisite' must be satisfied before a federal district court can obtain jurisdiction over a § 2000a claim." *Id.* (collecting cases).

Plaintiff does not allege that he provided written notice of Defendants' alleged act or practice to the SCHAC or initiated any proceeding before the SCHAC prior to filing his Complaint in state court or his Amended Complaint in federal court. As a result, Plaintiff has failed to state a claim under Title II. *See Wall v. Richland Cnty. Library*, C/A No. 3:24-5010-JDA-SVH, 2024 WL 5203045, at *4-5 (D.S.C. Dec. 5, 2024) (finding a plaintiff failed to state a Title II claim upon which relief could be granted in part because the plaintiff had not alleged that he satisfied the jurisdictional prerequisites for bringing such claim by filing a charge of discrimination with the SCHAC or following the procedures set forth in S.C. Code Ann. §§ 45-9-100, 45-9-110), *R&R adopted by* 2024 WL 5202637 (D.S.C. Dec. 23, 2024).[2]

---

[2] Plaintiff's claim against Defendant under Title II seeking money damages fails for a separate reason, as money damages are not permitted under Title II. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under [Title II], he cannot recover damages."); *Bellamy v. Waffle House*, C/A No. 4:24-cv-06661-JD-KDW, 2025 WL

8

### *South Carolina Public Accommodations Law*

Plaintiff alleges that Defendant's actions violated South Carolina's public accommodations law prohibiting racial discrimination in places of public accommodations. ECF No. 34 ¶ 23. However, as discussed above, Plaintiff has not alleged that he satisfied the prerequisites to bring a claim for violation of South Carolina's public accommodations law. Accordingly, Plaintiff's claim pursuant to S.C. Code Ann. § 45-9-10, *et seq.* should be dismissed. *See Harrison*, 2015 WL 337634, at *4 (finding that to the extent the plaintiff was bringing a claim under South Carolina's public accommodations law, such claim should be dismissed because the plaintiff failed to allege that he satisfied the law's jurisdictional prerequisites).

### *IIED*

Plaintiff alleges that Defendant is liable for IIED because "Defendant's public accusations, tone, and refusal of service were extreme and outrageous and caused [him] severe mental anguish and humiliation." ECF No. 34 ¶ 24. To recover for intentional infliction of emotional distress, a plaintiff must show that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;
>
> (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;
>
> (3) the actions of the defendant caused plaintiff's emotional distress; and

---

972862, at *2 (D.S.C. Apr. 1, 2025) ("Plaintiff seeks monetary damages, but the only relief available under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, is injunctive or declaratory relief.").

> (4) the emotional distress suffered by the plaintiff was severe such that no reasonable man could be expected to endure it.

*Argoe v. Three Rivers Behav. Health, L.L.C.,* 710 S.E.2d 67, 74 (2011) (citations and internal quotation marks omitted).

Plaintiff has failed to plausibly allege sufficient facts to establish the necessary elements of an IIED claim. ECF No. 55 at 10-11. Plaintiff alleges that Defendant refused to sell him a money order without disclosing its purpose. Plaintiff also alleges that he was treated rudely by several of Defendant's employees. Specifically, a customer service manager publicly accused Plaintiff of suspicious behavior, used a condescending and loud tone, pointed his finger at Plaintiff in a threatening and aggressive manner, and told Plaintiff to "relax." Assuming all well-pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to allege that Defendant's conduct was so "extreme and outrageous as to exceed all possible bounds of decency" and would be regarded as "atrocious" and "utterly intolerable in a civilized community." *Argoe*, 710 S.E.2d at 74.

Courts have found similar, and even more egregious, allegations insufficient to support an IIED claim. *See, e.g., Callum v. CVS Health Corp.*, 137 F.Supp.3d 817, 856 (D.S.C. 2015) ("Plaintiff alleges that when he called CVS Store # 7386 and explained to Keeler the nature of his disability and desired accommodation, Keeler laughed and denied Plaintiff's request. Plaintiff also claims Keeler became irritated, started talking in a loud, aggressive tone to him, insulted him with a racial slur, and threatened to call the police on Plaintiff. While these allegations suggest crudeness on Keeler's behalf, they do not rise to the level of extreme and outrageous conduct necessary to state a claim for IIED.") (citations omitted); *Moore v. Rural Health Servs., Inc.*, C/A No.1:04-376-RBH, 2007 WL 666796, at *17 (D.S.C. Feb. 27, 2007) (finding that allegations of

two of the defendant's board members coming to Plaintiff's workplace, calling him racist and threatening to fire him from the board, calling a sheriff's deputy to have him escorted off the property, shouting that he was a thief, and giving a newspaper reporter material from Plaintiff's personnel file were insufficient "to meet the high standard for establishing Plaintiff's outrage claim under South Carolina law"); *see also Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 71 (2007) (noting South Carolina courts' "widespread reluctance … to permit the tort of outrage to become a panacea for wounded feelings rather than reprehensible conduct.") (citation and internal quotation marks omitted); *Folkens v. Hunt*, 348 S.E.2d 839, 845 (S.C. Ct. App. 1986) (recognizing that "not all conduct … causing emotional distress in a business setting may serve as a basis for an action alleging outrage.").

Additionally, an IIED claim requires that Plaintiff suffer emotional distress so severe that no reasonable person could be expected to endure it. *Argoe*, 710 S.E.2d at 74. Plaintiff's Amended Complaint is devoid of specific allegations to sufficiently plead this element. *See Hocin v. Orange Lake Country Club, Inc.*, C/A No. 4:18-03584-MGL, 2019 WL 4094941, at *4 (D.S.C. Aug. 29, 2019) ("It is, of course, axiomatic a plaintiff must plead more than just the elements of his cause of action to withstand a Rule 12(b)(6) motion. Here, however, Hocin provides no factual allegation as to the emotional distress suffered. Merely describing the claimed stress and anxiety as 'severe' does not transform it into something that 'was severe so that no reasonable [person] could be expected to endure it.") (citation omitted); *Shipman v. Glenn*, 443 S.E.2d 921, 922-23 (S.C. Ct. App. 1994) (finding that a plaintiff's emotional distress of becoming upset, stressed, and worried; causing her to become physically ill to the point of leaving work early; and causing her to live in constant fear of her supervisor, which adversely affected her personal life and ability to function

11

in her job, fell "far short of that needed for an action of this kind."). Based on the foregoing, Plaintiff's IIED claim should be dismissed.

### *Negligent Hiring, Training, and Supervision*

Plaintiff alleges that Defendant failed to properly train its employees in non-discriminatory customer service practices and failed to discipline those involved in this matter despite having knowledge of the employees' behavior. ECF No. 34 ¶ 25.

"In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee ...." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008). "[T]he employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence." *Id.* at 331; *see Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct. App. 2005) ("[N]egligent hiring … cases generally turn on two fundamental elements – knowledge of the employer and foreseeability of harm to third parties …. From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused."); *Estate of Baker by and through Baker v. Wal-Mart Stores, Inc.*, C/A No. 8:23-02091-HMH, 2023 WL 5021769, at *2 (D.S.C. Aug. 7, 2023) (noting that an employer may be liable for negligent supervision/training when "(1) his employee intentionally harms another when he is on the employer's premises, is on premises he is privileged to enter only as employee, or is using the employer's chattel; (2) the employer knows or has reason to know he has the ability to control the employee; and (3) the employer knows or has reason to know of the necessity and opportunity to exercise such control.") (quoting *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014)).

In the Amended Complaint, Plaintiff complains of one incident and does not allege any facts that could lead to the reasonable inference that Defendant knew or should have known that its employment of a specific person created an undue risk of harm to the public. As a result, Plaintiff's negligent hiring, training, and supervision claims should be dismissed. *See Estate of Baker*, 2023 WL 5021769 at *2-3 (dismissing a plaintiff's claims for negligent hiring, negligent supervision, and negligent training under Rule 12(b)(6) when the plaintiff's complaint alleged "no facts to suggest that [the defendant] knew or should have known that the … store manager posed a danger to customers.").

Plaintiff argues generically that Defendant's Motion to Dismiss should be denied because the Motion is a "paper castle" lacking evidence, affidavits, and discovery. ECF No. 60-2 at 3-4. However, at the Rule 12(b)(6) stage, the Court addresses the sufficiently of the Complaint without considering outside evidence. *See Preiss-Wal Pat III, LLC*, 17 F.Supp.3d at 531; *E.I. du Pont de Nemours*, 637 F.3d at 448. Accordingly, Plaintiff's argument is without merit.

### *Service of Process*

Defendant also argues that this matter should be dismissed because Plaintiff failed to properly serve Defendant. ECF No. 55 at 13-15. A defendant may move to dismiss a case under Federal Rule of Civil Procedure 12(b)(5) based on "insufficient service of process." Fed. R. Civ. P. 12(b)(5).[3] Federal Rule of Civil Procedure 4 provides that a domestic corporation, partnership, or other unincorporated association must be served by "following state law for serving a summons

---

[3] Although Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the undersigned construes Defendant's request for dismissal based on insufficient service as being made pursuant to Rule 12(b)(5).

in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process …." Fed. R. Civ. P. 4(e), (h). Further,

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. …

Fed. R. Civ. P. 4(m). "The plaintiff bears the burden of proving adequate service once a motion to dismiss for insufficient service of process has been filed pursuant to Fed. R. Civ. P. 12(b)(5)." *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016).

Plaintiff filed a United States Postal Service tracking update indicating that his "item was delivered to the front desk, reception area, or mail room … in Lakeland, FL …." ECF No. 17-8 at 2.[4] Plaintiff also filed a return receipt reflecting that he addressed this mailing to "Headquarters Publix c/o CEO Kevin Murphy." *Id.* at 4. The return receipt reflects that the mailing was received by "Dion Thomas" on July 22, 2025. *Id.* Further, Plaintiff filed a return receipt from a mailing to

---

[4] The Court may consider documents outside of the pleadings when addressing whether Plaintiff properly served Defendant. *See Lail v. United States*, C/A No. 3:11–cv–0977–TLW–TER, 2012 WL 3779386, at *6 (D.S.C. Aug. 10, 2012) (citing *Lackey v. Cnty. of Macon*, C/A No. 2:09cv42, 2009 WL 2462186, at *2 (W.D.N.C. Aug. 7, 2009) (stating that, with respect to a Rule 12(b)(5) motion, "affidavits and other materials outside the pleadings may be properly submitted and considered")); *Ruiz v. Nationstar Martg. LLC*, C/A No. 1:12CV272, 2013 WL 4519180, at *2 n.3 (D.S.C. Aug. 26, 2013) ("Matters outside of the pleadings may be considered by the Court when decision motions under Rule … 12(b)(5) without converting the motion to one for summary judgment.") (collecting cases).

14

"Publix Super Markets Inc. c/o CT Corporation System" in Columbia, South Carolina. ECF No. 20-2 at 4. The mailing was received by "Pam Johnson" on August 28. *Id.*

Plaintiff's attempts do not satisfy the requirements for service under Florida, South Carolina, or federal law. Under Florida law, service on a domestic corporation by mail is generally not authorized. *See* Fla. Stat. § 48.081; Fla. R. Civ. P. 1.070(i); *Patterson v. Meredith Corp.*, C/A No. 6:18-cv-467-37GJK, 2018 WL 3860164, at *2 (M.D. Fl. June 29, 2018) (noting that "[u]nder Florida law, service by mail – or certified mail – is generally insufficient" but that the law "allows a corporation to consent to service by mail."); *Dixon v. Blanc*, 796 F. App'x 684, 688 (11th Cir. 2020) ("[T]he Florida Rules generally permit service of process by certified mail only if the defendant agrees to waive personal service."). There is no evidence that Defendant consented to service by mail.

Moreover, South Carolina permits service of corporations "by registered or certified mail, return receipt requested and delivery restricted to the addressee." Rule 4(d)(8), SCRCP. However, as reflected by the return receipt, Plaintiff did not restrict delivery of his mailings to the addressee.

Beyond following Florida or South Carolina law, Plaintiff could have sufficiently served Defendant by following federal law "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process …." Fed. R. Civ. P. 4(h)(1)(B). However, there is no evidence that either the Columbia or Florida mailings were delivered to one of the enumerated persons in Rule 4.[5]

---

[5] The Court takes judicial notice of the fact that CT Corporation System is not Defendant's registered agent for South Carolina. *See* South Carolina Secretary of State, Business Name Search, https://businessfilings.sc.gov/businessfiling/Entity/Search; *see also Phillips v. Pitt Cnty. Mem.*

Accordingly, Plaintiff has not met his burden of showing that he properly served Defendant. However, "[d]ismissal of an action against a defendant under Rule 12(b)(5) for insufficiency of service is within the discretion of the court and will not necessarily be granted when there is no prejudice to the defendant and proper service is likely to be accomplished." *Henderson v. Scott*, C/A No. 4:23-5280-SAL-TER, 2024 WL 2333950, at *2 (D.S.C. May 1, 2024) (citation and internal quotation marks omitted). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). "Generally, when service of process gives the defendant actual notice of the pending action, [a] court[ ] may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *Aten v. Boan*, C/A No. 3:20-cv-01390-DCC-KDW, 2020 WL 8455070, at *2 (D.S.C. Oct. 9, 2020); *see Scott*, 673 F. App'x at 304 ("[T]he real purpose of service of process is to give notice to the defendant, and mere technicalities should not stand in the way of consideration of a case on its merits.") (internal citations and quotation marks omitted). In light of Plaintiff's *pro se* status, Defendant's actual notice of this lawsuit, and the lack of prejudice to Defendant, the undersigned recommends that the district court decline to dismiss this matter based on improper service and uphold the Court's jurisdiction. Nevertheless, for the reasons set out above, the undersigned recommends that the district court dismiss this matter on the merits.

---

*Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that courts "may properly take judicial notice of matters of public record."); ECF No. 55 at 14-15 n.6.

**Plaintiff's Motion (ECF 71)**

Plaintiff filed a Motion to Strike, in which he asks the Court to strike two of Defendant's responses/replies regarding its Motions to Dismiss (ECF Nos. 66; 67), deny Defendant's Motion to Dismiss (ECF No. 55), and impose sanctions on Defendant for misrepresenting the date of service. ECF No. 71. Plaintiff also argues that Defendant is in default, removal was untimely, and this matter should be remanded to state court. *Id.* at 1-3.[6] Given Plaintiff's request that the Court deny Defendant's Motion to Dismiss and arguments regarding remand, the undersigned has issued a recommendation on this Motion.

The Court recommends that Plaintiff's request to strike Defendant's responses/replies be denied. Federal Rule of Civil Procedure 12 provides that "[t]he court may strike from *a pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Defendant's responses/replies are not pleadings. *See Yacht Basin Provision Co. v. Inlet Provision Co.*, C/A No. 2:22-cv-02180-DCN, 2022 WL 17068795, at *2 (D.S.C. Nov. 17, 2022) ("[M]otions to strike pursuant to Rule 12(f) are directed only to pleadings."); Fed. R. Civ. P. 7(a) (listing categories of pleadings).

The undersigned further recommends that the district court deny Plaintiff's requests that this matter be remanded and that Defendant be sanctioned. Plaintiff argues that Defendant was served on July 22, 2025, which rendered the removal untimely. ECF Nos. 71 at 6; 71-3 at 21. As discussed above, Plaintiff did not meet his burden of showing that Defendant was properly served with the Complaint. Defendant asserts that it received notice of this lawsuit on July 29, 2025, and

---

[6] Plaintiff reiterates these arguments in his Response opposing Defendant's Motion to Dismiss. *See* ECF No. 60.

17

filed its Notice of Removal on August 27, 2025 "out of an abundance of caution … in order to preserve its right to defend[] against Plaintiff's lawsuit in federal court." ECF No. 80 at 3. Because Plaintiff did not meet his burden of showing the Defendant was properly served with the Complaint, the undersigned finds that removal was not untimely and recommends that the district court deny Plaintiff's requests for default, to remand this matter, and to sanction Defendant.[7] *See*

---

[7] Federal Rule of Civil Procedure 11(c) allows a party to move for sanctions for violation of Rule 11(b). Fed. R. Civ. P. 11(c). Rule 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

"The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Cnty., Inc.*, 474 F. App'x 947, 950 (4th Cir. 2012) (citation omitted). While the Court has the discretion to impose sanctions for Rule 11 violations, it should do so "sparingly." *Jacobs v. Venali, Inc.*, 596 F.Supp.2d 906, 914 n.10 (D. Md. 2009).

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-56 (1999) (rejecting a "receipt rule" and finding that thirty-day removal period did not run when a defendant received a faxed, file-stamped copy of a complaint, but rather from the time defendant was formally served); *Elliot v. Am. States Ins. Co.*, 883 F.3d 384, 391 (4th Cir. 2018) ("The general rule … is that the time for counting days for filing notice of removal under [28 U.S.C.] § 1446(b) starts when the defendant is formally served with the summons and complaint making the defendant an official party to the action and requiring the defendant to appear."); *Reliford v. Pearson*, C/A No. 3:03–1561–17BC, 2004 WL 2660229, at *2 (D.S.C. Feb. 19, 2004) ("The thirty-day period for removal is not triggered until a defendant is formally served or waives service."). Additionally, for the reasons discussed herein, the Court recommends that Defendant's Motion to Dismiss be granted.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends that the district court **GRANT** Defendant's Motion to Dismiss (ECF No. 55) and **DENY** Plaintiff's Motion to Strike (ECF No. 71).

**IT IS SO ORDERED.**

s/William S. Brown
United States Magistrate Judge

October 10, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Suite 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).